GLENDA L. PINKARD, FORMERLY KNOWN AS GLENDA L. BOLTON, APPELLANT, V. CONFEDERATION LIFE INSURANCE COMPANY ET AL., APPELLEES, AND ROSE BOLTON, PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM BOLTON, DECEASED, INTERVENOR-APPELLEE.

647 N.W.2d 85

Filed July 12, 2002.   No. S-01-436.

Benjamin M. Belmont, of Lustgarten & Roberts, P.C., for appellant.

Christian R. Blunk, of Berkshire & Blunk, for intervenor-appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This is a declaratory judgment action involving two parties each claiming to be the beneficiary of an annuity contract. The Douglas County District Court found that the annuity benefits were payable to William Bolton's estate, and Glenda L. Pinkard, formerly known as Glenda L. Bolton (Pinkard), appeals.

## SCOPE OF REVIEW

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Nicholson v. General Cas. Co. of Wis.*, 262 Neb. 879, 636 N.W.2d 372 (2001).

## FACTS

On May 16, 1989, Bolton was seriously injured when equipment he was operating rolled over on him. During Bolton's period of recovery, he and Pinkard were married. Because of Bolton's extensive injuries, Pinkard was appointed his guardian and conservator.

On March 15, 1991, the county court for Douglas County entered an order authorizing Pinkard to settle Bolton's workers' compensation claim. The settlement provided for an immediate payment of $75,000 and monthly payments of $1,900 commencing on April 1, 1991, for a period of 10 years certain. Under the terms of the order authorizing Pinkard to settle, Bolton could not assign or pledge any of the payments. The settlement was approved by both the Workers' Compensation Court and the Douglas County District Court as of April 15, 1991.

On November 3, 1992, Bolton's guardianship and conservatorship were voluntarily terminated. As a part of the termination, Pinkard agreed she would not have any access to or control over Bolton's money.

Pinkard filed for dissolution of marriage on January 22, 1993, and the parties entered into a property settlement agreement. Bolton was awarded as his sole and separate property all right, title, and interest in all pension plans, employee benefit plans, and 401K plans, including workers' compensation benefits, received by reason of his employment. Pinkard was awarded as her sole and separate property all right, title, and interest in all pension plans, employee benefit plans, and any other benefits received by reason of her employment.

As a part of the property settlement agreement, the parties executed a mutual release. The release provided that the parties accepted the benefit of the property settlement agreement in full and complete satisfaction of all financial claims. The property settlement agreement was incorporated into the decree of dissolution the same as if it had been fully set forth in the decree.

Bolton died on August 17, 1998, and his first wife, Rose Bolton, was appointed personal representative of his estate. The legal heirs of the estate are Bolton's children with the personal representative.

Pinkard commenced this action for declaratory judgment seeking the remaining balance of the annuity. She alleged that she was the designated beneficiary of the annuity. In her prayer for relief, Pinkard requested that the district court declare that she is the sole beneficiary of the annuity and that she should be paid all accrued benefits along with interest, attorney fees, and costs.

The personal representative intervened, alleging that the dissolution decree and the property settlement agreement between Bolton and Pinkard terminated Pinkard's rights in Bolton's workers' compensation benefits, including the annuity. The personal representative requested that the district court determine that the estate was the sole beneficiary of the annuity and all benefits payable thereunder.

Pinkard and the personal representative subsequently filed motions for summary judgment. In its order of April 2, 2001, the district court found that there were no genuine issues of material fact and that the estate was entitled to judgment as a matter of law. The court entered judgment in favor of the estate and ordered payment to the estate of the remaining proceeds of the annuity when

due. Pinkard's motion for summary judgment was overruled, and her petition was dismissed.

## ASSIGNMENTS OF ERROR

Pinkard assigns as error that the district court erred (1) in finding as a matter of law that Bolton's estate was entitled to a judgment for the balance of the annuity payments, (2) in finding that she waived her interest in the annuity via the property settlement agreement in the dissolution decree, (3) in finding that she could not be a beneficiary under the annuity because such status was contrary to the county court's order authorizing settlement of the workers' compensation claim, and (4) in not granting her motion for summary judgment.

## ANALYSIS

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Nicholson v. General Cas. Co. of Wis.*, 262 Neb. 879, 636 N.W.2d 372 (2001). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Kirwan v. Chicago Title Ins. Co.*, 261 Neb. 609, 624 N.W.2d 644 (2001).

Pinkard, as Bolton's guardian and conservator, entered into a settlement with his employer through its workers' compensation carrier, Travelers Insurance Company (Travelers). The county court order approving the settlement provided in relevant part:

> (b) Travelers Insurance Companies promises to pay Glenda L. Bolton as Conservator for William C. Bolton the sum of One Thousand Nine Hundred Dollars ($1,900.00) per month beginning on April 1, 1991 for the life of William C. Bolton (hereinafter referred to as Payments). Said Payments are guaranteed for ten (10) years notwithstanding the prior death of William C. Bolton.
>
> (i) In no event and under no circumstances whatsoever shall any of the Payments set forth in subparagraph (b) be

accelerated and due prior to the aforementioned scheduled dates of payment, furthermore, in no event and under no circumstances shall any of the Payments bear interest prior to the aforementioned date of payment.

(ii) In the event of the death of said William C. Bolton before receipt of the Payments set forth in subparagraph (b), said remaining guaranteed payments still owing will be paid to the Estate of said William C. Bolton as they become due and in accordance with subparagraph (i) above.

(iii) Said William C. Bolton shall not be able to assign or pledge any of said Payments.

As a part of the settlement, Travelers purchased an annuity from Confederation Life Insurance Company that was subsequently assumed by Pacific Life Insurance Company and administered through Allstate Life Insurance Company. The annuity contract contained a schedule of benefits which listed Bolton as the payee, Travelers as the owner, and "Glenda Bolton" as the beneficiary. The schedule of benefits stated that Pinkard was Bolton's wife.

The dissolution decree incorporated a property settlement agreement which contained a mutual release providing as follows:

In consideration of the above and foregoing property and promises received, each party agrees to accept the benefit of this Property Settlement Agreement in full and complete satisfaction of all financial claims, monetary demands, support, alimony, child support or property rights of any kind, including all claims that either may have as the widow or widower of the other party or otherwise; and all claims which he or she had, now has or might hereinafter have against the other in the event of his or her death as an heir at law, surviving spouse or otherwise; and each party waives any and all claims which he or she may have in any property now owned by the other or which may hereinafter be acquired by the other, except as hereinabove provided.

The property settlement agreement further provided that each party agreed to

cooperate in the preparation and execution of all necessary documents to effectuate the terms of this Agreement. In the event either party fails to cooperate in the execution of any

such documents to effectuate the transfer of any property, real or personal, to the other, within thirty (30) days from the date of the Decree of Dissolution herein, this document in conjunction with such a Decree shall act in place of those necessary signatures and act to transfer said property.

The district court determined that there were no genuine issues of material fact. The court concluded that Pinkard could not be a beneficiary because such status would be contrary to the order entered by the county court providing that in the event of Bolton's death, the remaining annuity payments would be paid to his estate.

The district court further found that the property settlement contained in the dissolution decree waived any and all claims Pinkard had or might have against the estate in the event of Bolton's death. The court stated that there could be no surprise or misconception as to what status Pinkard was waiving because she was aware of her status as beneficiary of the annuity prior to the divorce. The court concluded that the estate was entitled to judgment as a matter of law and dismissed Pinkard's petition.

■ Pinkard first argues that the district court erred in finding that she waived her interest as the designated beneficiary of the annuity by executing the property settlement agreement. The general rule is that divorce does not affect a beneficiary designation in a life insurance policy. See *Lyman Lumber Co. v. Hill*, 877 F.2d 692 (8th Cir. 1989). "This rule is based on the notion that the beneficiary's claim to the proceeds evolves from the terms of the policy rather than the status of the marital relationship." *Larsen v. Northwestern Nat. Life Ins.*, 463 N.W.2d 777, 779 (Minn. App. 1990).

Pinkard relies upon *Schultz v. Schultz*, 591 N.W.2d 212 (Iowa 1999), in which the decedent's widow and the ex-wife both claimed an interest in the proceeds of the decedent's individual retirement account (IRA). The ex-wife remained listed as a beneficiary of the decedent's IRA after the decree of dissolution had awarded it to the husband. The decedent remarried and died 5 years later without removing the ex-wife's name as the beneficiary on the IRA. The trial court found that the dissolution decree did not specifically address the ex-wife's status as a beneficiary and, therefore, did not terminate her expectancy interest.

In affirming the trial court's decision, the Iowa Supreme Court reasoned that since the dissolution decree did not contain any stipulation or agreement concerning the IRA, the ex-wife's interest had not been disposed of by the dissolution decree and that the proceeds therefore belonged to the ex-wife. The court noted that in previous Iowa cases, the focus of the inquiry had been on the language of the dissolution decree and whether there was any stipulation or agreement that governed the parties' property rights.

In *Lynch v. Bogenrief,* 237 N.W.2d 793 (Iowa 1976), the ex-spouse was awarded retirement system death benefits because the dissolution decree made no mention of the death benefits payable and therefore did not control the contingent interest of the ex-spouse. An opposite result was reached in *Sorensen v. Nelson,* 342 N.W.2d 477 (Iowa 1984), in which the provisions of the dissolution decree disposed of the life insurance policy proceeds. The parties had relinquished all rights not expressly provided for in the agreement, and the court held that such language evidenced the parties' intent to " 'wipe the slate clean.' " *Id.* at 481.

Applying the same rationale, we believe that the focus of the inquiry should be upon the language of the dissolution decree and any agreement which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect. We make no distinction among IRA's, life insurance proceeds, or other types of annuities that designate the beneficiary in the event of the death of the payee. Each case must be evaluated based upon the facts indicating the parties' intent.

When Bolton and Pinkard divorced, the property settlement agreement provided that Bolton would receive as his sole and separate property all right, title, and interest in his employee benefit plans, including workers' compensation benefits. The benefits of the property settlement agreement were in full and complete satisfaction of all claims that either party might have, including claims which might later arise in the event of one party's death. Each party waived all claims in property owned or later acquired

by the other. The parties agreed that if either party failed to effectuate the transfer of any property, the settlement agreement, in conjunction with the decree of dissolution, would act in place of those necessary signatures to transfer the property.

Thus, we conclude as a matter of law that Pinkard relinquished her expectancy interest as the beneficiary of the workers' compensation annuity. The decree of dissolution, which incorporated the property settlement agreement, terminated her interest as a beneficiary of the annuity.

Having determined that the decree of dissolution effectively disposed of Pinkard's interest as a beneficiary, we do not reach her other assignments of error.

## CONCLUSION

There is no material issue of fact in dispute, and Bolton's estate is entitled to judgment as a matter of law. Therefore, we affirm the judgment of the district court.

AFFIRMED.

HENDRY, C.J., not participating.