MELISSA STRONG, APPELLANT, V. OMAHA CONSTRUCTION
INDUSTRY PENSION PLAN, APPELLEE, AND JOHN E. STRONG,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
WILLIAM DAVID STRONG, INTERVENOR-APPELLEE.

701 N.W.2d 320

Filed June 24, 2005.    No. S-03-1403.

Robert E. O'Connor, Jr., for appellant.

Lawrence G. Whelan for intervenor-appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Before his death, William David Strong participated in the Omaha Construction Industry Pension Plan (Plan), an employee benefit plan subject to the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1994) (ERISA). When William joined the Plan, he designated his wife, Melissa Strong, as his beneficiary for the Plan's pension death benefit. Although Melissa and William divorced in 1998, William did not remove Melissa as his beneficiary before his death. The district court determined that under the divorce decree, Melissa waived her interest and granted summary judgment to William's estate (Estate).

We must decide whether under federal law Melissa waived her beneficiary interest in the death benefit by agreeing to the terms of the divorce decree. We conclude that under the federal common law, a divorce decree can waive a beneficiary interest in the death benefit of an ERISA-governed pension plan. Because the unambiguous language of the divorce decree shows that Melissa intended to waive her interest in the death benefit, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

Employees eligible for the Plan are provided with a summary plan description that includes a section entitled "How Can I Designate a Beneficiary?" It provides:

> Your spouse is your automatic beneficiary but if you do not have a spouse, your beneficiary will be the person or persons you so designate in your latest **written** notice to the Fund Office. You may change your beneficiary at any time you so desire prior to your death by **written notice to the Fund Office.**
>
> In the event that you fail to name a beneficiary, the Trustees will pay the Death Benefits to your dependent children, if any, in equal shares. If neither your legal spouse [n]or dependent children survive you, then the Death Benefits will be computed and shall be paid in a one-time lump sum amount to the executor or administrator of your estate.

(Emphasis in original.)

During William and Melissa's marriage, William signed a beneficiary designation card for the pension, naming Melissa as his beneficiary. William and Melissa divorced in 1998, but before his death in 2000, William did not change the beneficiary designation card. So, the only beneficiary designation provided to the Plan named Melissa. Melissa argues the beneficiary designation card controls to whom the pension death benefit must be paid.

The personal representative, however, argues that Melissa waived any interest she had in the pension death benefit by entering into the divorce decree. The decree provides:

> Each of the parties is awarded the ownership of the . . . personal property of every kind and description now in each party's possession, including bank accounts, automobiles, 401K plans, *retirement plans*, insurance policies, and other intangible property now possessed by each or owned by each in their separate names . . . .
>
> . . . .
>
> . . . All property and money received and retained by the parties pursuant hereto, except as specifically provided to the contrary, shall be the separate property of the respective parties, free and clear of any right, interest or claim of the other party and each party shall have the right to deal with

and dispose of his or her separate property, both real and personal as fully and effectively as if the parties had never been married . . . .

(Emphasis supplied.)

We note that ERISA contains anti-alienation provisions that prevent plan participants from unwisely alienating their interests in ERISA-regulated pension plans. 29 U.S.C. § 1056(d). A qualified domestic relations order (QDRO) is an exception to the anti-alienation rule. Under this exception, persons may alienate their benefits for things such as child support and alimony. 29 U.S.C. § 1056(d)(3). To fall within the QDRO exception, the state domestic relations order must comply with specific requirements set out in 29 U.S.C. § 1056(d)(3). It is undisputed that the divorce decree failed to comply with these requirements and therefore was not a QDRO.

After William's death, Melissa claimed the pension death benefit. Initially, the Plan agreed to pay her. But William's personal representative then claimed the death benefit on behalf of the Estate. After receiving the Estate's claim, the Plan refused to pay the death benefit to either party until it had an order from an appropriate court.

After the Plan refused to pay the pension death benefit, Melissa brought this action. The Estate intervened and moved for summary judgment. After the court denied the motion, Melissa moved for summary judgment. In addition to opposing Melissa's motion, the Estate moved the court to reconsider the denial of its earlier motion for summary judgment. The court determined that its earlier order was incorrect and granted the Estate summary judgment. Melissa then filed a motion for new trial, which the court overruled.

## II. ASSIGNMENTS OF ERROR

Melissa assigns that the court erred in (1) granting the Estate's motion for summary judgment, (2) failing to grant her motion for summary judgment, and (3) overruling her motion for new trial.

## III. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be

drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

## IV. ANALYSIS

### 1. JURISDICTION

The Estate argues we lack jurisdiction because Melissa failed to file a timely notice of appeal. The trial court entered summary judgment for the personal representative on September 17, 2003. A party must file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing. Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 2004). A motion for a new trial, however, terminates the time in which a notice of appeal must be filed. § 25-1912(3). And, if the court denies the motion, the party has 30 days from the entry of the order denying the motion to file a notice of appeal.

Here, Melissa filed a motion for new trial on September 24, 2003. The court overruled the motion on November 17, and Melissa filed her notice of appeal on December 15. The Estate, however, argues that a motion for new trial cannot follow a grant of summary judgment and thus that Melissa's motion for new trial did not terminate the time for filing a notice of appeal. If so, Melissa's notice of appeal was untimely because she filed it more than 30 days after September 17, the day the court granted summary judgment to the Estate.

■■■ A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Id.* So, Melissa's motion following the entry of summary judgment was not a proper motion for a new trial under Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2004).

■■ That, however, does not mean Melissa's motion failed to terminate the time for an appeal. Neb. Rev. Stat. § 25-1329 (Cum. Supp. 2002) authorizes a motion to alter or amend a judgment. If filed no later than 10 days after the entry of judgment, a motion to alter or amend a judgment, like a motion for a new

trial, terminates the period in which a party must file a notice of appeal. § 25-1912(3). Thus, if Melissa's motion qualified as a motion to alter or amend a judgment, she timely filed her notice of appeal.

In determining what qualifies as a motion to alter or amend a judgment, the key is not the motion's title. If the motion seeks substantive alteration of the judgment—as opposed to the correction of clerical errors or relief wholly collateral to the judgment—a court may treat the motion as one to alter or amend the judgment. See *Woodhouse Ford v. Laflan, supra.* In her motion, Melissa claimed that there were irregularities in the proceedings and that the court erred on questions of law. For her relief, she sought "an Order granting a new trial" and any other "relief deemed equitable and just." In effect, she requested that the court reconsider its grant of summary judgment. A motion for reconsideration is the functional equivalent of a motion to alter or amend a judgment. *Woodhouse Ford v. Laflan, supra.* So, we treat Melissa's motion as one to alter or amend the judgment. We have jurisdiction.

## 2. PENSION DEATH BENEFIT

In brief, the dispute over the death benefit centers on three factors. First, the documents governing the Plan provide: "Your spouse is your automatic beneficiary but if you do not have a spouse, your beneficiary will be the person or persons you so designate in your latest written notice to the Fund Office." (Emphasis omitted.) Second, the last written notice William had given to the fund office before his death designated Melissa as his beneficiary. Third, between the time William sent the notice and his death, he and Melissa divorced, and, according to the Estate, Melissa waived her beneficiary interest in the pension death benefit by agreeing to the terms of the divorce decree. Who is entitled to the death benefit depends on whether the beneficiary designation or the purported waiver in the non-QDRO divorce decree controls.

### (a) Issue Preempted by Federal Law

This case involves an ERISA-governed employee benefit plan. ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"

covered by the statutory scheme. 29 U.S.C. § 1144(a). This preemption provision is " 'deliberately expansive' and [is] consistently construed to accomplish the congressional purpose of [e]nsuring certain minimum standards in the administration of employee benefit plans." *Manning v. Hayes*, 212 F.3d 866, 870 (5th Cir. 2000) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987)). Determination of beneficiary status is an area of core ERISA concern. *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001) (holding that ERISA expressly preempted state statute providing that designation of spouse as beneficiary on nonprobate asset was automatically revoked upon divorce). Therefore, federal law controls. See, *McMillan v. Parrott*, 913 F.2d 310 (6th Cir. 1990); *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*, 897 F.2d 275 (7th Cir. 1990) (en banc); *Lyman Lumber Co. v. Hill*, 877 F.2d 692 (8th Cir. 1989).

### (b) Ascertaining Federal Rule

Having concluded that federal law preempts state law, we turn to the more difficult task of ascertaining what the federal rule is. To do this, we "look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." See *McMillan v. Parrott*, 913 F.3d at 311. Courts that have considered the same issue presented by this case have split on whether the issue is controlled by the language of ERISA or the federal common law.

Some courts hold that 29 U.S.C. § 1104(a)(1)(D) controls. It provides that plan fiduciaries are to conduct their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." *Id.* According to these courts, 29 U.S.C. § 1104(a)(1)(D) requires plan administrators to determine a plan's beneficiary by examining the plan documents. If, as here, the plan documents state that the employee's beneficiary will be determined by the last written beneficiary designation on file, an attempt to waive a beneficiary interest with language in an extraneous divorce decree is ineffective. See, *McMillan v. Parrott, supra*; *Estate of Zienowicz v. Metropolitan Life Ins. Co.*, 205 F. Supp. 2d 339 (D.N.J. 2002).

See, also, *Estate of Altobelli v. Intern. Bus. Machines Corp.*, 77 F.3d 78 (4th Cir. 1996) (Wilkinson, J., dissenting); *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown, supra* (Easterbrook, J., dissenting; Ripple, J., dissenting); *Keen v. Weaver*, 121 S.W.3d 721 (Tex. 2003) (Hecht, J., dissenting). We will call this approach the plan-documents rule.

The plan-documents rule, however, is the minority rule. A majority of courts have concluded that 29 U.S.C. § 1104(a)(1)(D) does not govern the issue, and so one must look to the federal common law. These courts generally hold that when an employee's spouse waives a beneficiary interest in the employee's benefit plan under a divorce decree, the waiver is effective despite the employee's failure to change the beneficiary designation after the divorce. See, e.g., *National Auto. Dealers v. Arbeitman*, 89 F.3d 496 (8th Cir. 1996); *Estate of Altobelli v. Intern. Bus. Machines Corp., supra*; *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321 (5th Cir. 1994); *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown, supra* (en banc); *Keen v. Weaver, supra*. Cf. *Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904 (10th Cir. 1991). We will call this the waiver rule.

### (i) Precedential Weight of Federal Court Decisions When Construing Federal Rule

Before determining whether to follow the plan-documents rule or the waiver rule, we need to resolve conflicting statements in our case law on what weight we will give lower federal court decisions when Nebraska courts must construe federal law. Some of our decisions in older cases treat lower federal court decisions as binding precedent. For example, in *Anderson v. Wagner*, 207 Neb. 87, 296 N.W.2d 455 (1980), we relied on decisions from lower federal courts in interpreting the federal Truth in Lending Act. We stated that "we are obligated to examine any existing federal court cases because, in the administration and interpretation of federal legislative acts, pertinent opinions of the federal courts are *binding* upon the state courts." (Emphasis supplied.) 207 Neb. at 91, 296 N.W.2d at 458. See, also, *First Data Corp. v. State*, 263 Neb. 344, 639 N.W.2d 898 (2002) (stating rule in dicta); *Darr v. Long*, 210 Neb. 57, 313 N.W.2d 215 (1981); *Hadley v. Union P. R. Co.*, 99 Neb. 349, 156 N.W. 765 (1916).

Of course, in cases like this, when federal courts disagree on what is the correct rule, it is impossible for us to apply the rule that federal court decisions are binding. If we treat one group of opinions as binding, we necessarily disregard the other group as nonbinding.

Our decisions in the older cases present a broader problem: They conflict with our more recent cases that have treated lower federal court decisions as persuasive rather than binding. See, *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003); *In re Search Warrant for 3628 V St.*, 262 Neb. 77, 628 N.W.2d 272 (2001). Accord *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 481, 658 N.W.2d 258, 267 (2003) ("[o]n matters of federal law, the decisions of federal courts are highly *persuasive*, particularly where federal legislative history and the interpretation of federal statutes are at issue"). For example, in *In re Application of Lincoln Electric System, supra*, we were required to interpret 47 U.S.C. § 253 (2000) of the federal Telecommunications Act to determine if it preempted a Nebraska statute. After noting that federal courts disagreed on the issue, we stated that "the Supreme Court has not addressed the specific preemption issue before us, and in the absence of an interpretation of § 253(a) by the Court, we are not bound by any circuit court's interpretation." 265 Neb. at 79, 655 N.W.2d at 371.

Similarly, in *In re Search Warrant for 3628 V St., supra*, we were confronted with a split in federal authority over whether the First Amendment guarantees access to a sealed affidavit used to support a search warrant. We rejected the argument that we were bound to follow the position adopted by the Eighth Circuit. In reaching that conclusion, we relied on Justice Thomas' concurring opinion in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). He wrote:

> The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation. In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is

located. . . . An Arkansas trial court is bound by this Court's (and by the Arkansas Supreme Court's and Arkansas Court of Appeals') interpretation of federal law, but if it follows the Eighth Circuit's interpretation of federal law, it does so only because it chooses to and not because it must.

(Citations omitted.) 506 U.S. at 376.

■ To the extent that *First Data Corp. v. State, supra*; *Darr v. Long, supra*; *Anderson v. Wagner*, 207 Neb. 87, 296 N.W.2d 455 (1980); *Hadley v. Union P. R. Co., supra*, and any other case suggest that lower federal court decisions are binding, they are overruled. So, while Nebraska courts must treat U.S. Supreme Court decisions as binding authority, lower federal court decisions are only persuasive authority.

### (ii) Adoption of Waiver Rule

Having concluded that we are not required to treat lower federal court decisions as binding precedent, we must now decide whether Nebraska will follow the waiver rule or the plan-documents rule. We determine the waiver rule is the better rule.

■ Courts are to develop a federal common law of rights and obligations under ERISA-regulated plans. *Anderson v. HMO Nebraska*, 244 Neb. 237, 505 N.W.2d 700 (1993). But the "authority of courts to develop a 'federal common law' under ERISA . . . is not the authority to revise the text of the statute." *Mertens v. Hewitt Associates*, 508 U.S. 248, 259, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993). So, a court may resort to the federal common law to answer a question only when ERISA is silent on the issue. See *Mers v. Marriott Intern.*, 144 F.3d 1014 (7th Cir. 1998).

Courts adopting the minority plan-documents rule have concluded that ERISA is not silent on whether a non-QDRO divorce decree can waive a beneficiary interest in an ERISA-governed benefit plan. As noted, these courts rely on 29 U.S.C. 1104(a)(1)(D), which requires that fiduciaries, including plan administrators, must discharge their duties "in accordance with the documents and instruments governing the plan." They reason that determining who is entitled to the death benefits under an ERISA-governed plan is one of the plan administrator's duties and that therefore, plan administrators should examine the plan

documents rather than turning to rules supplied by the federal common law.

We, however, are not persuaded by the statutory construction used by the court's adopting the plan-documents rule. Instead, we agree with the majority of courts that have recognized that 29 U.S.C. § 1104(a)(1)(D) only attempts to set out a plan administrator's duties. It is, therefore, "a very thin reed" upon which to conclude that ERISA expressly establishes a methodology for determining the beneficiary of an ERISA-governed benefits plan. *Manning v. Hayes*, 212 F.3d 866, 872 (5th Cir. 2000).

Nor are we persuaded by the dissent's argument that *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001), undermines the waiver rule. In *Egelhoff*, the court held that ERISA preempted a Washington statute that provided that a spouse's designation of a beneficiary of a nonprobate asset is revoked automatically upon divorce. But it did not answer the issue presented in this case: whether *under federal law* an extraneous divorce decree can waive a beneficiary interest in an ERISA-governed benefits plan. In fact, by our count, every court to consider this issue has rejected the argument that *Egelhoff* undermines the waiver rule. See, *Guardian Life Ins. Co. of America v. Finch*, 395 F.3d 238 (5th Cir. 2004); *Keen v. Weaver*, 121 S.W.3d 721 (Tex. 2003); *MacInnes v. MacInnes*, 260 Mich. App. 280, 677 N.W.2d 889 (2004).

Because ERISA does not expressly control the issue whether an extraneous divorce decree can waive a beneficiary interest in an ERISA-governed benefits plan, the issue is controlled by the federal common law. In developing a federal common law to govern ERISA issues, it is appropriate to look to both the statute itself as well as analogous state law. See, *Manning v. Hayes, supra*; *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*, 897 F. 2d 275 (7th Cir. 1990).

Under Nebraska law, the general rule is that divorce, per se, does not affect a beneficiary designation in a non-ERISA life insurance policy, IRA, annuity, or similar financial investment. *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002). But a spouse may waive such a beneficiary interest in a divorce decree. See *id*. For example, in *Pinkard*, we held that when a former wife waived her beneficiary interest in an annuity

by entering into a property settlement agreement, the waiver was effective even though her former husband had not changed the beneficiary designation after the divorce. In determining whether a divorce decree waives a beneficiary interest,

the inquiry should be upon the language of the dissolution decree and any agreement which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect.

*Pinkard v. Confederation Life Ins. Co.*, 264 Neb. at 318, 647 N.W.2d at 89.

The rule we adopted in *Pinkard* for addressing beneficiary interests in non-ERISA financial investments and insurance policies is consistent with the federal common law developed by courts following the waiver rule. See, e.g., *Melton v. Melton*, 324 F.3d 941, 945-46 (7th Cir. 2003) (holding test is "whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question than with any magic language contained in the waiver itself"); *Manning v. Hayes*, 212 F.3d 866, 871 (5th Cir. 2000) (holding waiver is effective if "explicit, voluntary and made in good faith"). We see no problem then in using the same standard we announced in *Pinkard* to determine whether a person waived a beneficiary interest in an ERISA-governed benefit plan.

So, the issue in this case is whether the dissolution decree and any property settlement agreement incorporated therein manifested Melissa's intent to relinquish all property rights in the pension death benefit. If so, the agreement will be given effect.

Melissa and William's divorce decree provided:

Each of the parties is awarded the ownership of the . . . personal property of every kind and description now in each party's possession, including bank accounts, automobiles, 401K plans, *retirement plans*, insurance policies, and other intangible property now possessed by each or owned by each in their separate names . . . .

. . . .

. . . All property and money received and retained by the parties pursuant hereto, except as specifically provided to

the contrary, shall be the separate property of the respective parties, free and clear of any right, interest or claim of the other party and each party shall have the right to deal with and dispose of his or her separate property, both real and personal as fully and effectively as if the parties had never been married . . . .

Thus, the decree expressly stated not only that the retirement plan belonged to William, but that he would take it "free and clear of any right, interest or claim" of Melissa. We agree with the trial court that this unambiguously shows that Melissa, by entering into the divorce decree, intended to waive whatever interest she had in William's retirement plan, including her beneficiary interest in the plan's death benefit. Because there are no disputed fact questions regarding Melissa's intent, the court correctly entered summary judgment for the Estate.

## V. CONCLUSION

We hold that under the federal common law, a party waives his or her beneficiary interest in an ERISA-governed benefits plan by entering into a divorce decree if the decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights in the plan. Because it is undisputed that the divorce decree shows that Melissa intended to waive her beneficiary interest in the death benefit of the Plan, the Estate was entitled to summary judgment.

AFFIRMED.

CONNOLLY, J., dissenting.

I join the portion of the majority opinion holding that this court has jurisdiction, as well as the portion holding that Nebraska courts need only treat lower federal court decisions as persuasive authority. I respectfully dissent, however, from the decision to adopt the waiver rule. In my view, the plan-documents rule is based on the correct interpretation of the language of ERISA and better serves the policies underlying ERISA.

### LANGUAGE OF ERISA

As the majority opinion acknowledges, a court may resort to the federal common law to answer a question *only* when ERISA is silent on the issue. See, *Mers v. Marriott Intern.*, 144 F.3d 1014 (7th Cir. 1998). Here, ERISA expressly states that fiduciaries,

including plan administrators, must discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). It is beyond question that one of a plan administrator's duties is to determine who is entitled to receive a plan's death benefit once an employee who belongs to the plan dies. See *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001). It necessarily follows that in carrying out their duty to determine who is entitled to receive benefits, plan administrators must examine the plan documents rather than turning to rules supplied by the federal common law. If, as here, the plan documents state that the beneficiary will be the person or persons that the employee designates in his or her last written notice, the written notice governs who the beneficiary will be. Extraneous attempts to waive the beneficiary interest are ineffective.

I recognize that a majority of courts has rejected this interpretation of 29 U.S.C. § 1104(a)(1)(D). Ordinarily, I might give this factor considerable weight in deciding which of two conflicting positions Nebraska should follow. But, not one of the courts in this majority has explained why the statutory analysis used by those courts adopting the plan-documents rule is flawed. In fact, the closest that any court has come to providing a reason for rejecting the claim that 29 U.S.C. § 1104(a)(1)(D) controls the issue is the Fifth Circuit's claim that the section is "a very thin reed" upon which to conclude that ERISA expressly controls whether a beneficiary interest can be waived in a divorce decree. *Manning v. Hayes*, 212 F.3d 866, 872 (5th Cir. 2000). Because the waiver rule is based, at best, on throwaway, conclusory statements rather than a careful analysis of statutory language, I believe the fact that a majority of cases have adopted it is entitled to little weight.

Moreover, the U.S. Supreme Court's decision in *Egelhoff v. Egelhoff, supra,* bolsters the conclusion that the language of ERISA, rather than the federal common law, controls the issue presented by this case. In *Egelhoff*, the court held that ERISA preempted a Washington statute that provided that the designation of a spouse as a beneficiary of a nonprobate asset is revoked automatically upon divorce. The court concluded that the statute

had an impermissible connection with the beneficiary determination. It reasoned that the statute ran counter to

> ERISA's *commands* that a plan shall "specify the basis on which payments are made to and from the plan," § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." § 1002(8).

(Emphasis supplied.) 532 U.S. at 147.

*Egelhoff*, although not directly on point, undercuts the majority's claim that ERISA remains silent on how plan administrators should determine who the beneficiary of a death benefit is. According to the Court, 29 U.S.C. § 1104(a)(1)(D)—when coupled with other ERISA provisions—functions as a "command" that a plan administrator should determine the beneficiary in accordance with the documents and instruments governing the plan. If so, the plan administrator need not supplement ERISA with federal common-law rules that look outside the plan documents.

## POLICY

Not only is the waiver rule more consistent with the plain language of ERISA, it also better serves the policy reasons that drove Congress' decision to adopt ERISA. "One of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursements of benefits.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 148, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987)). Under the plan-documents rule, an employer can adopt rules providing that the beneficiary designation on file will control who will receive benefits. Then, no need exists to analyze the language of divorce decrees to determine if there has been a waiver. A plan administrator can look at the beneficiary designation on file and immediately know to whom it must pay the proceeds. This "yield[s] simple administration, avoid[s] double liability, and ensure[s] that beneficiaries get what's coming

quickly, without the folderol essential in less-certain rules." *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting).

In contrast, the "waiver rule" frustrates Congress' goal of easy and uniform administration. The Seventh Circuit, in *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown, supra*, was one of the first courts to adopt the waiver rule. At the time, it predicted that "the federal courts are charged with creating federal common law rules to govern ERISA . . . and the creation of such federal rules will provide the needed uniformity." 897 F.3d at 281-82. The reality, however, has been something far different.

A myriad of tests has been developed for determining whether language in a divorce decree was sufficient to act as a waiver. At one end of the spectrum is the Seventh Circuit, which invokes what appears to be an objective test; language in a decree satisfies the test if "a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question." *Melton v. Melton*, 324 F.3d 941, 945-46 (7th Cir. 2003).

In contrast, the Eighth Circuit ostensibly employs a test similar to the Seventh Circuit, asking whether the decree's language is "sufficiently specific to convey the intent of the parties to divest one or the other, or both, of a beneficiary interest." *Hill v. AT&T Corp.*, 125 F.3d 646, 648 (8th Cir. 1997). Yet, the Eighth Circuit will go beyond the decree's language and examine the parties' postdivorce relationship to determine whether a waiver was intended. For example, in *Mohamed v. Kerr*, 53 F.3d 911 (8th Cir. 1995), the court concluded that the former spouse of an employee had waived her interest in the employee's benefit plan. One of the reasons that the court gave was that after the former spouse of the employee found out he had Alzheimer's disease, she "could not get away fast enough, and she never looked back." *Id.* at 916.

The Fifth Circuit falls somewhere in between the Seventh and Eighth Circuits. It will look first to the language of the decree, but will apparently go beyond that language to ensure that the waiver was voluntary and made in good faith. See *Manning v. Hayes*, 212 F.3d 866 (5th Cir. 2000).

Finally, other courts adopting the waiver rule have opted to avoid providing any guidance on how to determine if a waiver has occurred. See, *Estate of Altobelli v. Intern. Bus. Machines*

*Corp.*, 77 F.3d 78 (4th Cir. 1996) (adopting waiver rule, but not stating test); *Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904 (10th Cir. 1991) (suggesting waiver was possible, but not stating test). Of course, this approach does little to provide guidance to plan administrators trying to figure out to whom they are to pay plan benefits.

The disparity in how courts determine whether a waiver exists has resulted in substantially similar language being treated differently. For example, in *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown, supra*, the court held that an ex-wife waived her interest in the death benefits of her former husband's pension plan when the divorce decree provided " 'the parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.' " Likewise, in *Estate of Altobelli v. Intern. Bus. Machines Corp.*, 77 F.3d at 80-81, the court found that a wife "clearly intended" to waive her interest in her husband's pension, when the decree provided, " 'All of the following property is hereafter the sole and exclusive property of the Husband, and the Wife hereby waives and transfers to the Husband any interest that she may have in the property: . . . Husband's IBM pension . . . .' " But in *Lyman Lumber Co. v. Hill*, 877 F.2d 692, 693 (8th Cir. 1989), the court held that language in a decree stating the employee " 'shall have as his own, free of any interest of [his wife], his interest in the profit-sharing plan of his employer . . .' " did not waive the wife's beneficiary interest in the profit-sharing plan because the language was not specific enough.

But the complications that arise from the waiver rule are not merely cross-jurisdictional. Even within a jurisdiction, whether a waiver has occurred often depends upon hairline distinctions. For example, in the Eighth Circuit, sometimes the failure to specify an exact interest in an employee benefit plan will result in a finding of no waiver. *Lyman Lumber Co. v. Hill, supra*. Yet, sometimes broad, sweeping language means that a waiver was intended. See *Mohamed v. Kerr, supra*. A decree that states a spouse is giving up "any interest" in a plan means no waiver was intended; but a decree that states giving up "any interest or claim" equates to a waiver. *Id*. Similarly, reciprocal language—both spouses giving up any interest in the other spouse's benefit plan—is, for reasons

that escape me, more indicative of an intent to waive than language in which only one spouse gives up an interest in the other spouse's benefit plan. *Id.*

So, the waiver rule has not resulted in the predicted uniformity, but instead has provided an array of muddled and sometimes contradictory precedents. Plan administrators (let alone attorneys drafting divorce decrees) have little hope of knowing what construction a court will give to particular language or if factors outside of the divorce decree should be considered. This confusion is the antithesis of what Congress intended and encourages "conflicts among parties asserting rights to plan benefits, miring plan assets in expensive litigation." *Estate of Altobelli v. Intern. Bus. Machines Corp.*, 77 F.3d 78, 83 (4th Cir. 1996) (Wilkinson, J., dissenting).

### PERCEIVED FAIRNESS CREATED BY WAIVER RULE

Finally, I think it worth commenting on the factor that I believe is driving courts to adopt the waiver rule: the perception that it is fairer in individual cases than the plan-documents rule. To an extent, this is true. Under the plan-documents rule, a bargained-for agreement to give up a beneficiary interest in a spouse's ERISA-governed benefit plan will go unenforced if it appears in a non-QDRO divorce decree. As a result, the spouse who had intended to waive the interest will receive a windfall. In contrast, the waiver rule would prevent at least some of these windfalls from happening by allowing plan administrators and courts to examine the extraneous documents in which the waiver was made. It is a similar concern for individual fairness that led me to join the opinion in *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), which holds that for non-ERISA investments and insurance policies, a beneficiary interest can be waived in a divorce decree.

But this concern for individual fairness comes at a price. It leads to a lack of uniformity that complicates administration, slows the payment of benefits, and encourages litigation. So, "what seem like small equitable steps in a particular case may lead to large administrative headaches in the aggregate." *Estate of Altobelli v. Intern. Bus. Machines Corp.*, 77 F.3d at 84. (Wilkinson, J., dissenting). Congress, hoping to avoid these "large headaches," required the plan administrator to administer

plans in accordance with the plan documents. In other words, it chose uniformity and ease of administration over individual fairness. That is a policy decision entrusted to Congress, and one that no court, including this one, has the power to disregard.

STEPHAN, J., joins in this dissent.