TINA L. TRUEBLOOD, PERSONAL REPRESENTATIVE OF THE ESTATE OF MARK L. MAXSON, APPELLEE AND CROSS-APPELLANT, V. MARLA J. ROBERTS, APPELLANT AND CROSS-APPELLEE.

732 N.W.2d 368

Filed May 22, 2007.   No. A-05-1084.

Thomas R. Lamb, of Anderson, Creager & Wittstruck, P.C., for appellant.

Paula J. Metcalf for appellee.

SIEVERS and CASSEL, Judges, and HANNON, Judge, Retired.

CASSEL, Judge.

After Mark L. Maxson and Marla J. Roberts divorced, Maxson died, leaving a life insurance policy naming Roberts as beneficiary. The district court for Lancaster County entered summary judgment against Roberts, requiring her to pay the death-benefit proceeds to Maxson's estate. Roberts appeals, and Tina L. Trueblood, the personal representative of Maxson's estate, cross-appeals. We conclude that the settlement agreement and the decree in the divorce do not show an intention to effect a change in Roberts' status as beneficiary. We reverse, and remand for further proceedings.

## BACKGROUND

Maxson and Roberts were married on June 25, 1983. On June 26, 1991, Roberts (who at the time shared Maxson's

surname) filed a petition for divorce. The district court for Lancaster County filed its decree of dissolution on July 23, 1992. The decree incorporated the settlement agreement, and such agreement stated that it constituted a "full, final and complete settlement by [Maxson and Roberts] with respect to all property rights, interests and claims between them." Paragraph 4 of the settlement agreement, which we quote in full in the analysis section below, recited the existence of separate life insurance policies owned by Maxson and Roberts and declared that each party would "retain as [his or her] own separate property [his or her] respective life insurance policy described above and any surrender value accrued thereunder."

Maxson died on December 18, 2003, and Trueblood was subsequently appointed personal representative of Maxson's estate. At the time of Maxson's death, his life insurance policy was in effect, and Roberts remained the policy's named beneficiary. On April 12, 2004, Globe Life & Accident Insurance Co. issued a check for the proceeds of Maxson's policy to "Marla J. Maxson" in the amount of $24,763. However, the check was mailed to the attorney for Maxson's estate. The estate's attorney forwarded the check to Roberts, stating that perhaps she would be "back in touch with [Roberts] if it appears that the estate has a claim" on the life insurance policy. On July 7, the estate's attorney mailed Roberts a letter requesting her to return the insurance proceeds to Maxson's estate, based upon the language of the settlement agreement providing that Maxson would retain his life insurance policy.

On December 23, 2004, Trueblood, as personal representative of Maxson's estate, filed a complaint alleging that the dissolution decree and the settlement agreement between Maxson and Roberts terminated Roberts' rights in Maxson's life insurance benefits and asked that the court order Roberts to pay the estate the sum of $24,763, plus prejudgment interest, attorney fees, and costs. Roberts filed an answer to the complaint, admitting that she was Maxson's former spouse. With respect to paragraph 4 of the settlement agreement, Roberts asserted such agreement manifested the intent that Maxson would have ownership of his life insurance policy and that he would "be able to do with said policy of insurance as he pleased from that date forward."

Trueblood filed a motion for summary judgment. At the hearing on that motion, the district court received into evidence Trueblood's affidavit; the motion for summary judgment; the estate's complaint, which contained the decree of dissolution and the settlement agreement; Roberts' answer; and Roberts' affidavit in opposition to the motion for summary judgment.

In its judgment entered on August 18, 2005, the district court found that the estate was entitled to judgment as a matter of law and ordered Roberts to pay the estate the life insurance proceeds that were previously paid to her. The district court denied the estate's request for prejudgment interest, finding that Roberts did not obtain title to the proceeds by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that therefore, there was no constructive trust. Roberts appeals, and Trueblood cross-appeals.

## ASSIGNMENTS OF ERROR

Roberts asserts that the district court erred in granting the motion for summary judgment, because several operative facts are still in dispute, and in finding that the settlement agreement effectively disposed of Roberts' beneficiary interest. On cross-appeal, Trueblood asserts that the district court erred in not applying the constructive receipt doctrine in order to award prejudgment interest.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

■ A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question. *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995).

## ANALYSIS

■ Under Nebraska law, the general rule is that divorce does not affect a beneficiary designation in a life insurance policy. *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312,

647 N.W.2d 85 (2002). This rule is based on the notion that the beneficiary's claim to the proceeds evolves from the terms of the policy rather than the status of the marital relationship. *Id.* But a spouse may waive such a beneficiary interest in a divorce decree. See *id.* See, also, *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005). In *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. at 318, 647 N.W.2d at 89, the Nebraska Supreme Court directs us to focus upon

> the language of the dissolution decree and any agreement which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect. We make no distinction among IRA's, life insurance proceeds, or other types of annuities that designate the beneficiary in the event of the death of the payee.

The question before us, then, is whether the divorce documents in the instant case manifest that intent. Because we find significant differences in the divorce documents in the instant case from those in *Pinkard* and *Strong*, we reject the district court's decision finding such intent.

In *Pinkard*, in addition to language stating that the parties agreed to execute documents necessary to carry out the agreement and that upon failure to do so, the decree would operate as a transfer, the agreement stated:

> "In consideration of the above and foregoing property and promises received, each party agrees to accept the benefit of this Property Settlement Agreement *in full and complete satisfaction of all* financial claims, monetary demands, support, alimony, child support or *property rights of any kind, including* all claims that either may have as the widow or widower of the other party or otherwise; and *all claims which he or she had, now has or might hereinafter have against the other in the event of his or her death as an heir at law, surviving spouse or otherwise*; and each party waives any and all claims which he or she may have in any property now owned by the other or which may hereinafter be acquired by the other, except as hereinabove provided."

264 Neb. at 316, 647 N.W.2d at 88 (emphasis supplied). Based on this language, the court concluded as a matter of law that Pinkard had relinquished her expectancy interest as the beneficiary of the annuity.

In *Strong*, while describing Nebraska law as consistent with its application of federal common law, the Nebraska Supreme Court used the standard from *Pinkard* to determine whether a person had waived a beneficiary interest in a benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). Once again, the court found as a matter of law that the dissolution decree language showed a waiver by the former spouse. The court relied upon language from the decree stating:

"Each of the parties is awarded the ownership of the . . . personal property of every kind and description now in each party's possession, including bank accounts, automobiles, 401K plans, retirement plans, insurance policies, and other intangible property now possessed by each or owned by each in their separate names . . . .

. . . .

. . . *All property and money received and retained by the parties pursuant hereto, except as specifically provided to the contrary, shall be the separate property of the respective parties, free and clear of any right, interest or claim of the other party* and each party shall have the right to deal with and dispose of his or her separate property, both real and personal as fully and effectively as if the parties had never been married . . . ."

*Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 12-13, 701 N.W.2d 320, 330 (2005) (emphasis omitted) (emphasis supplied).

As the dissenting opinion in *Strong* pointed out,

whether a waiver has occurred often depends upon hairline distinctions. For example, in the Eighth Circuit, sometimes the failure to specify an exact interest in an employee benefit plan will result in a finding of no waiver. . . . Yet, sometimes broad, sweeping language means that a waiver was intended. . . . A decree that states a spouse is giving up "any interest" in a plan means no waiver was intended;

> but a decree that states giving up "any interest or claim" equates to a waiver. . . . Similarly, reciprocal language— both spouses giving up any interest in the other spouse's benefit plan—is . . . more indicative of an intent to waive than language in which only one spouse gives up an interest in the other spouse's benefit plan.

*Id.* at 17-18, 701 N.W.2d at 333 (Connolly, J., dissenting). In our opinion, the decision in the case before us turns upon such a distinction.

In the case before us, the dissolution decree adopted Maxson and Roberts' settlement agreement and directed them to perform its provisions. Both the decree and the settlement agreement contained language directing Maxson and Roberts to sign reasonably required documents to accomplish, respectively, the terms of the decree and the intentions of the agreement and stating that in the event of a failure to comply, the instrument would operate as a transfer. In our view, the only other language from these documents significant to our decision is found in paragraph 4 of the settlement agreement, which states:

> 4. INSURANCE. [Roberts] is the owner of a policy of life insurance on her life issued by Globe Life & Accident Insurance Co., policy number . . . . [Maxson] is the owner of a policy of life insurance on his life issued by Globe Life & Accident Insurance Co., policy number . . . . *Each party shall retain as [his or her] own separate property [his or her] respective life insurance policy described above and any surrender value accrued thereunder.*

(Emphasis supplied.)

In comparison to the language from the dissolution decrees considered by the court, respectively, in *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), and *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005), the language in the decree in the instant case fails to manifest the intent of Maxson and Roberts to relinquish all property rights. First, it provides that each shall "retain" his or her insurance policy as his or her separate property. Such language, where it speaks only of retaining existing separate property, cannot be construed as giving something up. After the dissolution, Maxson retained full ownership of his policy

and the same incidents of ownership that he possessed prior to the divorce—including the right to designate a beneficiary and to change that designation at will. Second, the agreement contains no language evidencing any waiver or relinquishment by Roberts. Instead, Maxson and Roberts reciprocally agreed to maintain existing separate rights to property. That absence of language stands in stark contrast to the respective wording of the agreements and decrees in *Pinkard* and *Strong*.

Trueblood also argues that paragraph 10 of the settlement agreement supports the district court's decision. That paragraph refers to Neb. Rev. Stat. § 30-2316 (Reissue 1989), which in turn expressly applies only to a surviving spouse's right to elective share, the spouse's right to certain statutory allowances, and the spouse's right to other benefits that would pass to the spouse "by intestate succession or by virtue of the provisions of any will executed before the . . . property settlement." *Id.* Clearly, Roberts did not claim the policy proceeds by asserting a right to elective share or a right to statutory allowances. The death benefit of the insurance policy does not pass by intestate succession or by will; rather, the death benefit is based on the contract rights in the policy. By its terms, the language of the settlement agreement based on § 30-2316 does not apply to the property or interests concerned in the instant case. The settlement agreement does not supply the missing manifestation of intent to relinquish all property rights. Ultimately, the settlement agreement lacks any language that Maxson's intent was that Roberts could not receive the death benefit even if she was the named beneficiary of his life insurance policy.

For these reasons, the district court erred in entering summary judgment for the estate, and we reverse, and remand the matter for further proceedings, remembering that Roberts did not file a cross-motion for summary judgment in her favor. Our conclusion, of course, eliminates any need to discuss Trueblood's cross-appeal asserting that the estate should have received an award of prejudgment interest. We reverse, and remand the cause to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

INBODY, Chief Judge, not participating.

SIEVERS, Judge, concurring.

While I concur in the result reached by my colleagues, I take this opportunity to explain that I view the law on the issue presented in this appeal differently than do my colleagues. My point of departure is that my colleagues apparently read the authority so that the inquiry into the parties' intent is limited to the contents of the divorce decree and/or property settlement. I believe that close scrutiny of the leading Nebraska case, *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), and its main underpinning, *Larsen v. Northwestern Nat. Life Ins.*, 463 N.W.2d 777 (Minn. App. 1990), reveals that the inquiry into intent extends beyond the divorce documents and includes facts and events occurring after the divorce. And, in my view, such facts often are far more revealing of the parties' intent than the language of the divorce decree or property settlement agreement.

The majority opinion has already dissected the *Pinkard* decision in some detail, and thus, I focus on *Larsen v. Northwestern Nat. Life Ins., supra*, given our court's use of the Minnesota Court of Appeals decision. The Minnesota court addressed the question of who was the proper recipient of the proceeds of a life insurance policy following the death of the insured. In *Larsen*, the court explained:

> Ordinarily, marriage dissolution does not affect the right of the named beneficiary. When an insured does not change the beneficiary of his or her life insurance policy after a marriage dissolution, the ex-spouse beneficiary is entitled to the proceeds of the policy upon the death of the insured. This rule is based on the notion that the beneficiary's claim to the proceeds evolves from the terms of the policy rather than the status of the marital relationship. . . .
>
> However, under certain circumstances the ex-spouse beneficiary may have surrendered his or her right by a property settlement, which may or may not have been incorporated into the dissolution decree. . . . "Whether a property settlement agreement should be deemed to bar the [ex-spouse beneficiary's right to the insurance proceeds] is a question of the construction of the agreement itself. Where there is no provision that the effecting of the settlement agreement

should deprive her of her rights as named beneficiary and she in fact remains named as beneficiary, the settlement agreement will not be given broader scope than its express terms specify."

*Id.* at 779-80 (citations omitted). In finding that the former spouse in *Larsen* was not entitled to the proceeds of the life insurance policy, the Minnesota Court of Appeals said:

Although neither the stipulation nor the dissolution decree specifically referred to the beneficiary designation of decedent's life insurance policy, we believe the references in the decree and stipulation granting *"all right, title and interest* [in those life insurance policies covering his or her respective life]" contemplated rights beyond the cash surrender value of the policy or the right merely to receive physical delivery of the policy.

*Id.* at 780 (emphasis in original).

However, the Minnesota court neither acknowledges nor discusses the fact that the most significant right for a policy owner, often more valued than the cash surrender value, is the right to leave the death benefit to a person or entity of the policy owner's choosing. Notably, in *Larsen,* the divorce documents were completely silent on this point. With all due respect to the Minnesota court, I submit that the court simply made the language of the divorce stipulation that each party was awarded "all right, title and interest" in the policy into a beneficial interest waiver. The Minnesota court did this without explaining how an unmentioned waiver was present and without discussing the obvious fact that finding a waiver may well frustrate the owner's true intent with respect to the death benefit, because the court was effectively voiding a contract—of which the policy's named beneficiary is a third-party beneficiary.

With what I perceive as shortcomings of the *Larsen* decision noted, I find great significance in the fact that the *Larsen* court went well outside the language of the divorce documents by reciting facts that clearly justified the fiction that there was a waiver in the divorce documents. The Minnesota court justified the finding of a waiver in the divorce documents by citing from the record several key pieces of evidence as follows: (1) the wife had inquired of her counsel about changing beneficiary

designations, but was told by her counsel to wait until the dissolution was final; (2) the wife was killed in an automobile accident just 50 days after the entry of the final dissolution decree; and (3) there was evidence that the wife's intent was that in the event of her death, she wanted her property to go to her mother. Thus, I suggest that the Minnesota court's finding of a waiver in *Larsen* was really the result of looking beyond the divorce documents in order to ascertain that the wife's true intent was that her former husband not be her beneficiary and that while saying there was a waiver, the court was in reality simply giving effect to the wife's intent as revealed by collateral facts.

This quite naturally takes me to the *Pinkard* court's admonition that "[e]ach case must be evaluated based upon the facts indicating the parties' intent." *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 318, 647 N.W.2d 85, 89 (2002). This statement, by its terms, does not limit the evaluation of intent to that derived solely from the divorce documents. However, I respectfully note that the quoted admonition can be seen as lacking consistency with another statement from the *Pinkard* opinion, as follows:

> [W]e believe that *the focus of the inquiry should be upon the language of the dissolution decree and any agreement* which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect.

*Id.* (emphasis supplied).

Therefore, I respectfully suggest that the *Pinkard* opinion leaves open the question of whether the search for intent is limited to the divorce documents or whether the search can properly extend to collateral facts. However, as said, it is significant that the *Larsen* decision, cited by the *Pinkard* court, obviously considered and used the collateral facts to find that the wife's intent was that her former spouse would not be her policy's beneficiary, even though he was still so named at the time of her untimely and unexpected death.

I briefly note the dissent in *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005), a decision

discussed by the majority opinion. Justice Connolly's dissent, in which Justice Stephan joined, disagreed with the majority's decision to adopt the waiver rule instead of relying upon the plan-documents rule. Notably, Justice Connolly summarized the myriad of tests that have been developed for determining whether language in a divorce decree was sufficient to act as a waiver and concluded that "the waiver rule has not resulted in the predicted uniformity, but instead has provided an array of muddled and sometimes contradictory precedents." *Id.* at 18, 701 N.W.2d at 333. Justice Connolly further wrote that he joined the opinion in *Pinkard*, which he said "holds that for non-ERISA investments and insurance policies, a beneficiary interest can be waived in a divorce decree," because of "individual fairness." *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. at 18, 701 N.W.2d at 334.

Therefore, I respectfully submit that current Nebraska precedent set forth in *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), leaves the question open as to where the courts may properly search for the parties' intent—just the divorce documents or also the collateral facts. As a result, while I agree with my colleagues that the divorce documents in the instant case do not manifest either Maxson's intent that Roberts, his former wife, not be his beneficiary (even if she is named in the policy as beneficiary) or Roberts' waiver of her right to receive the policy proceeds if she is named as beneficiary. However, I would go further than my colleagues and look to the collateral facts, which leave no doubt on this record that Maxson intended that Roberts be his beneficiary. By looking to the divorce documents and the collateral facts, I suggest we achieve an approach to these cases that does not resort to legal fictions by crafting waivers which are not stated in the documents and that instead provides more comfort that the result is more likely to be reflective of what the deceased policy owner truly intended. In searching for the policy owners' real intention, which to me is the decisive factor, we should remember how simple it is to write into the settlement agreement or the decree a provision that each former spouse gives up any claim to the death proceeds, regardless of the policy's beneficiary designation.

In the case before us, when the collateral facts in the record are added to the lack of waiver language in the divorce documents, the result is abundantly clear. Remembering the admonition from the majority opinion in *Pinkard* that "[e]ach case must be evaluated based upon the facts indicating the parties' intent," 264 Neb. at 318, 647 N.W.2d at 89, the key collateral fact here is that Maxson did not in the 11 years after the divorce became final change the named beneficiary on his policy—even though, as the policy owner, he had the right to do so—to effect such a change if that was his intent. From the undisputed facts, viewing them in the light most favorable to Roberts—as I must do on review of a grant of summary judgment—the only reasonable inference is that Maxson's intent was that his named beneficiary, Roberts, his former wife, was to receive the life insurance proceeds upon his death. Therefore, I join in the reversal of the grant of summary judgment to the estate.