or whether statutory grounds for termination were shown. And because we conclude that termination of Tom's parental rights was in error, we decline to address Tom's arguments that Nicole's statements were inadmissible hearsay. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.[18]

## VI. CONCLUSION

We affirm the county court's order terminating Brandy's parental rights. But because the State did not rebut the presumption that Tom was a fit parent, the county court's order terminating Tom's parental rights is reversed.

Affirmed in part, and in part reversed.

---

[18] *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

---

Brenda R. Rice, appellant, v. Christina Webb,
Personal Representative of the Estate of
Dale E. Rice, deceased, appellee.
___ N.W.2d ___

Filed March 21, 2014.    No. S-13-458.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.
2. **Judgments: Divorce: Property Settlement Agreements.** A dissolution decree which approves and incorporates into the decree the parties' property settlement agreement is a judgment of the court itself.
3. **Courts: Jurisdiction: Divorce: Property Settlement Agreements.** A district court, in the exercise of its broad jurisdiction over marriage dissolutions, retains jurisdiction to enforce all terms of approved property settlement agreements.
4. **Courts: Jurisdiction.** A court that has jurisdiction to make a decision also has that power to enforce it by making such orders as are necessary to carry its judgment or decree into effect.
5. **Divorce: Insurance.** The general rule is that divorce does not affect a beneficiary designation in a life insurance policy.
6. **Divorce: Property Settlement Agreements: Intent.** If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect.

7. **Contracts.** Ambiguity exists in a document when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
8. **Divorce: Intent.** If the contents of a dissolution decree are unambiguous, the decree is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the decree.
9. **Divorce.** If the contents of a dissolution decree are unambiguous, the effect of the decree must be declared in the light of the literal meaning of the language used.
10. **Divorce: Modification of Decree: Property Settlement Agreements.** Where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions will not thereafter be vacated or modified in the absence of fraud or gross inequity.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

James A. Cada, of Cada, Cada, Hoffman & Jewson, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Brenda R. Rice and Dale E. Rice were married in September 2001. In May 2011, Brenda filed for divorce. Brenda and Dale entered into a property settlement agreement, and on August 8, 2011, the district court for Lancaster County filed a decree dissolving their marriage and incorporating the property settlement agreement. Dale died shortly thereafter on August 15. At the time of his death, Dale owned two life insurance policies and Brenda was still listed as the primary beneficiary on both policies. After Brenda filed claims for the proceeds of the life insurance policies, the personal representative of Dale's estate filed a motion to enforce the decree, arguing that under the property settlement agreement, Brenda no longer had any legal claim to the policies. Following the receipt of evidence, the district court filed its "Judgment of Enforcement of Decree" on April 23, 2013, in which it ordered Brenda to withdraw her

claims under Dale's life insurance policies. Brenda appeals. We conclude that by the four corners of the property settlement agreement, which was incorporated into the divorce decree, Brenda clearly and unambiguously relinquished her beneficiary interests in Dale's life insurance policies, and we therefore affirm.

## STATEMENT OF FACTS

Brenda and Dale were married in September 2001. No children were born of their marriage, but both Brenda and Dale had children from prior marriages. Brenda filed for divorce in May 2011. On August 6, Brenda and Dale signed a property settlement agreement. On August 8, the district court entered a decree dissolving the marriage, which incorporated the property settlement agreement. Relevant portions of the property settlement agreement are quoted below. Paragraph VI of the property settlement agreement provided:

> **VI. STOCKS, BANK ACCOUNTS, LIFE INSURANCE POLICICES** [sic]**, PENSION PLANS AND RETIREMENT PLANS**
>
> [Brenda] shall be awarded all interest in all pension plans, stocks, retirement accounts, 401(k), IRA, life insurance policy and checking or savings account in [Brenda's] name, free from any claim of [Dale] including all ownership interest in the LincOne Federal Credit Union joint account. [Dale] shall be awarded all interest in any pension plans, stocks, retirement accounts, 401(k), IRA, life insurance policy and checking or savings account in [Dale's] name, free from any claim of [Brenda]. The parties shall divide evenly the sums in the LincOne Credit Union accounts.

Paragraph IX of the property settlement agreement provided:

> **IX. PROPERTY PROVISIONS AND SETTLEMENT OF PROPERTY RIGHTS OF PARTIES**
>
> It is expressly understood by and between the parties hereto that the provisions of this agreement relating to the property and liabilities of each, set aside and allocate to each party his or her respective portions of the properties belonging to the parties and of the liabilities of the

parties at the date hereto; and each party acknowledges that the properties set aside to him or her, less the liabilities so allocated to him or her, will be in full, complete and final settlement, release and discharge, as between themselves, of all rights, claims, interests and obligations of each party in and to the said properties and the same in their entirety constitute a full, fair and equitable division and the partition of their respective rights, claims and interests in and to the said properties of every kind and nature.

Paragraph X of the property settlement agreement was labeled "**WAIVER AND RELEASE OF MARITAL RIGHTS**." Subsections (a) and (b) of paragraph X contain almost identical language, except that subsection (a) refers to Dale and subsection (b) refers to Brenda. Paragraph X provided in part:

Pursuant to *Neb. Rev. Stat.* Section 30-2316, the parties hereby agree as follows:

(a) In consideration of the provisions of this agreement, [Dale] waives and relinquishes any and all interest or rights of any kind, character, or nature whatsoever, including but not limited to all rights to elective share, homestead allowance, exempt property, and family allowance in the property of [Brenda], and renounces all benefits which would otherwise pass to [Dale] from [Brenda] by intestate succession or by virtue of the provisions of any Will executed before this Settlement Agreement which he, as husband, or as widower, or otherwise, has had, now has, or might hereafter have against [Brenda], or, in the event of her death, as an heir at law, surviving spouse, or otherwise. [Dale] also waives and relinquishes any and all interest, present and future, in any and all property, real, personal, or otherwise, now owned by [Brenda] or hereafter acquired, and including all property set aside for her in this agreement, it being the intention of the parties that this agreement shall be a full, final, and complete settlement of all matters in dispute between the parties hereto.

(b) In consideration of the provisions of this agreement, [Brenda] waives and relinquishes any and all

interest or rights of any kind, character, or nature what-soever, including but not limited to all rights to elective share, homestead allowance, exempt property, and family allowance in the property of [Dale], and renounces all benefits which would otherwise pass to [Brenda] from [Dale] by intestate succession or by virtue of the provisions of any Will executed before this Settlement Agreement which she, as wife, or as widow, or otherwise, has had, now has, or might hereafter have against [Dale], or, in the event of his death, as an heir at law, surviving spouse, or otherwise. [Brenda] also waives and relinquishes any and all interest, present and future, in any and all property, real, personal, or otherwise, now owned by [Dale] or hereafter acquired, and including all property set aside for him in this agreement, it being the intention of the parties that this agreement shall be a full, final, and complete settlement of all matters in dispute between the parties hereto.

At the time of Dale's death, he owned two separate life insurance policies, one with Primerica and one with Unum. Both life insurance policies were awarded to Dale in the property settlement agreement. Brenda was still listed as the primary beneficiary for both policies when Dale died. Subsequent to Dale's death, Brenda made claims for the proceeds of the life insurance policies.

On September 1, 2011, the personal representative of Dale's estate filed a motion entitled "Motion to Enforce Divorce Decree," which stated that Brenda had waived her status as the beneficiary to Dale's life insurance policies. The motion also stated that by the property settlement agreement, Brenda had waived all rights and claims that she had to Dale's pension plan, stocks, retirement accounts, 401K, IRA, life insurance policies, and checking or saving accounts held by Dale.

On October 3, 2011, the district court filed an order granting the motion to enforce the divorce decree. The district court's order was vacated by the Nebraska Court of Appeals on July 30, 2012, in case No. A-11-938. The order was vacated, because the dissolution proceedings had not been

revived by Dale's estate and therefore the district court did not
have jurisdiction.

Following the mandate, on October 1, 2012, the personal
representative of Dale's estate filed a "Verified Motion for
Revivor" pursuant to Neb. Rev. Stat. § 25-1403 (Reissue
2008). The district court sustained this motion by order filed
January 4, 2013.

Brenda filed a motion entitled "Motion to Modify/Reform
Property Settlement Agreement" on March 8, 2013. In her
motion, Brenda asserted that as part of their dissolution pro-
ceedings, Brenda and Dale intended to keep each other as
beneficiaries on the other's life insurance policies and that
nothing in the property settlement agreement was intended to
change that intention. Brenda sought to offer evidence to sub-
stantiate her contention. Brenda requested an order from the
court determining that the property settlement agreement did
not change the parties' status as beneficiaries of each other's
life insurance policies or, in the alternative, an order modify-
ing or reforming the property settlement agreement to reflect
that intention.

The district court conducted an evidentiary hearing on the
motion to enforce the divorce decree and the motion to modify
or reform the property settlement agreement on April 10,
2013. Prior thereto, the district court entered a pretrial confer-
ence order on March 21. In the pretrial conference order, the
parties described several legal issues presented by the case,
including whether the district court had authority to enforce
the decree and whether the property settlement agreement
was ambiguous.

The parties stipulated to the following facts:

1. That on August 8, 2011, the Court entered a Decree
and approved the Property Settlement Agreement entered
into by Brenda . . . and Dale . . . and signed by them on
the date indicated.

2. That Dale . . . died on August 15, 2011.

3. That Christina Webb was appointed Personal
Representative of the Estate of Dale . . . pursuant to
**Neb.Rev.Stat.** § 25-1403 *et seq*.

4. That this Court has jurisdiction over the subject matter and parties.

5. That Christina Webb is the Personal Representative of the Estate of Dale . . . and as an heir and oldest child, appears on behalf of the heirs of Dale . . . .

6. That at the time of his death, Dale was the owner of certain life insurance policies with Primerica and Unum which policies were awarded to [Dale] in the Property Settlement Agreement.

7. That at the time of his death Brenda was listed as the primary beneficiary of the Primerica and Unum life insurance polic[ies].

8. That at the time of his death, Dale was the owner of a LincOne account.

9. That at the time of his death, . . . Brenda was the joint owner of the . . . LincOne account.

10. That at the time of his death, Dale was the owner of a 401(k) retirement account with Vanguard which account was awarded to him in the Property Settlement Agreement.

11. That at the time of his death, Brenda was listed as the primary beneficiary of the Vanguard retirement account.

12. That Brenda directly relinquished her survivor claim to the Vanguard retirement account which was then awarded to her son who was the contingent/alternate beneficiary.

13. That upon his death, Brenda made application to receive the proceeds of the Primerica life insurance policy.

14. That by agreement of the parties, the proceeds from the death benefit of the Primerica policy are being held in escrow pending resolution of [this] case.

At the hearing, Dale's estate offered exhibits 15 and 16, which the district court received without objection. Exhibit 15 is a stipulation of facts as to what the attorney representing Brenda during the divorce proceedings, Terrance A. Poppe, would testify to if he were called. Exhibit 15 states:

1) That . . . Poppe . . . is an attorney, licensed to practice law in the State of Nebraska[.]

2) That Poppe was counsel to Brenda . . . in the divorce proceeding styled and captioned *Brenda Rice v. Dale Rice* in the District Cou[rt] of Lancaster County, Nebraska, CI 11-2081.

3) That . . . Dale . . . was not represented by counsel in that proceeding.

4) That all dealings that Poppe had concerning the agreement of the parties with respect to their property settlement agreement were with his client Brenda . . . .

5) That Poppe had no conversations, discussions or other communications with Dale . . . concerning the terms of the parties['] property settlement agreement, prior to the drafting and execution of the agreement.

6) That at no time during the discussions leading up to the preparation and execution of the property settlement agreement that Poppe prepared, was Poppe informed by Brenda that the parties had an agreement that they would retain their status as beneficiary of the other's life insurance and other accounts.

7) To the best of Poppe's recollection, the issue of the parties' beneficiary status was not discussed.

8) That at no time did Poppe discuss with Brenda . . . that the provisions of the property settlement agreement, as drafted, could affect the parties' status as beneficiary of the other's life insurance policy or accounts.

9) That attached hereto and marked Exhibit A is a true and correct copy of . . . Poppe's billing records showing the dates of conferences and meetings with Brenda . . . .

Exhibit 16 was also a stipulation of facts, in which the parties stipulated that "in addition to an agree facts [sic] set forth in the Pretrial Order, the following facts are true and may be relied upon by the Court in its disposition of this matter." The stipulation of facts in exhibit 16 states in relevant part:

### Dale's Primerica Life Insurance Policy

11. Prior to his marriage to Brenda, Dale was the owner of a term life insurance policy with Primerica with a death benefit of $250,000.00.

12. When the original policy was issued in 1992, his former wife Peggy was the primary beneficiary

and his "children of the marriage" were the contingent beneficiaries.

13. On or about January 3, 1997, after his divorce from Peggy, Dale identified his primary beneficiaries as Christina Rice, David E. Rice and Cynthia Rice [Dale's three children].

14. On or about January 17, 1997 Dale identified his contingent beneficiary as Loren Huddle [Dale's mother].

15. That on or about January 26, 2001, before his marriage to Brenda, Dale identified Brenda as his primary beneficiary and [Dale's three children] as his contingent beneficiaries.

16. Dale did not further change the beneficiary designation of the Primerica policy prior to his death.

17. At the time of the divorce, Dale still owned the Primerica policy.

18. Although not specifically mention[ed] in the property settlement agreement, it was the intention of the parties that Dale was awarded his Primerica policy.

19. At the time of his death, Brenda was still listed as the primary beneficiary and [Dale's three children] as the contingent beneficiaries.

20. After his death, Brenda made application for the death benefit as the primary beneficiary.

### Dale's Unum Life Insurance Policy

21. At the time of the divorce Dale owned a term life insurance policy with Unum Insurance with a death benefit of $50,000.00.

22. At the time of the divorce Brenda was the primary beneficiary of the Unum policy and John Kelch [Brenda's son] was the contingent beneficiary.

23. Although not specifically mention[ed] in the property settlement agreement, it was the intention of the parties that Dale was awarded the Unum policy.

24. At the time of his death Brenda remained the primary beneficiary of the Unum policy and [Brenda's son] was the contingent beneficiary.

Brenda testified at the hearing, primarily regarding conversations she and Dale had had regarding their statuses as

beneficiary of the other's life insurance policies. The attorney representing Dale's estate objected "based on hearsay, not the best evidence, no probative value, and in violation of the parole [sic] evidence rule." The district court granted a standing objection. Brenda offered exhibit 17, a transcript of telephone voice messages between Brenda and Dale, and exhibit 18, a transcript of text messages between Brenda and Dale. The attorney representing Dale's estate reiterated the standing objection, and the district court received exhibits 17 and 18 and took the objections under advisement.

The district court filed its "Judgment of Enforcement of Decree" on April 23, 2013, in which it agreed with the personal representative of Dale's estate that Brenda had relinquished her beneficiary interest in Dale's life insurance policies, and it rejected Brenda's contentions to the contrary. The district court relied on *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), and concluded that the property settlement agreement was clear and unambiguous. The court determined that under the property settlement agreement, Brenda and Dale intended to relinquish their beneficiary and ownership interests in each other's life insurance policies and retirement accounts. The court rejected Brenda's arguments that the property settlement agreement was ambiguous, that parol evidence could be employed to determine Brenda's and Dale's intent on this issue, and that the property settlement agreement should be reformed. The court ordered Brenda to withdraw her claims under Dale's life insurance policies and to renounce her rights to any property or interest in Dale's estate and proceeds from any insurance policies on Dale's life.

Brenda appeals.

## ASSIGNMENTS OF ERROR

Brenda generally assigns, restated, that the district court erred when it (1) determined that the terms of the property settlement agreement were unambiguous and that by its terms, Brenda waived her status as the designated beneficiary of Dale's life insurance policies; (2) failed to award her the proceeds of Dale's life insurance policies; and (3) granted the motion

of Dale's estate to enforce the decree by removing her as the designated beneficiary of Dale's life insurance policies.

## STANDARD OF REVIEW

[1] The meaning of a divorce decree presents a question of law, in connection with which we reach a conclusion independent of the determination reached by the court below. *Hohertz v. Estate of Hohertz*, 19 Neb. App. 110, 802 N.W.2d 141 (2011).

## ANALYSIS

At issue in this appeal is the meaning of the portions of the decree for dissolution which touch on the disposition of two life insurance policies on Dale's life. The district court determined that under the decree, which incorporated the parties' property settlement agreement, Brenda had relinquished, renounced, and waived any right, title, or interest in and to any property interest in the proceeds from any insurance policies on Dale's life. To enforce the decree, Brenda was ordered to withdraw her claims made against the Dale's estate and to the life insurance policies.

Dale's estate contends that the property settlement agreement is clear and unambiguous and that, by the language of the property settlement agreement, Brenda relinquished her beneficiary interests in Dale's life insurance policies as the district court determined. In contrast, Brenda contends that the district court erred. Brenda first asserts that she did not relinquish her beneficiary interests in Dale's life insurance policies under the terms of the property settlement agreement. Second, Brenda asserts that the property settlement agreement is ambiguous and that parol evidence would show that Brenda and Dale intended that they each remain the designated beneficiary on each other's life insurance policies. Third, Brenda asserts that if it is determined that the property settlement agreement is unambiguous, it should nevertheless be reformed to reflect such intent. We find no merit to Brenda's arguments, and we affirm.

[2] We set forth some preliminary matters which are useful to our analysis. We have long held that a dissolution decree

which approves and incorporates into the decree the parties' property settlement agreement is "a judgment of the court itself." *Chamberlin v. Chamberlin*, 206 Neb. 808, 818, 295 N.W.2d 391, 397 (1980). See *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006). It has been observed that once the court adopts the agreement and sets it forth as a judgment of the court with corresponding ordering language, the contractual character of the property settlement agreement is subsumed into the court-ordered judgment. *Henderson v. Henderson*, 307 N.C. 401, 298 S.E.2d 345 (1983). "At that point the court and the parties are no longer dealing with a mere contract between the parties." *Id*. at 407, 298 S.E.2d at 350. Thus, in the present case, we are considering the meaning of a judgment rather than a contract.

The decree dissolving a marriage becomes final and operative on the date of death of one of the parties to the dissolution if such death occurs before 30 days have passed after entry of the decree. Neb. Rev. Stat. § 42-372.01(1) (Reissue 2008). See, also, Neb. Rev. Stat. § 42-372 (Reissue 2008). Thus, in the present case, the marital status of Brenda and Dale was fixed as divorced persons upon the happening of Dale's death.

[3,4] We have held that the district court, in the exercise of its broad jurisdiction over marriage dissolutions, retains jurisdiction to enforce all terms of approved property settlement agreements. *Strunk v. Chromy-Strunk, supra*. A court that has jurisdiction to make a decision also has that power to enforce it by making such orders as are necessary to carry its judgment or decree into effect. *Id*. The obligations of the decree involved in this case concern property rights. The district court revived the action at the request of Dale's estate, which sought to enforce the terms of the property settlement agreement. Thus, in the present case, "the action taken by the district court [was] nothing more and nothing less than enforcing that portion of the decree which obligated" the parties regarding Dale's life insurance policies. See *Dennis v. Dennis*, 6 Neb. App. 461, 465, 574 N.W.2d 189, 192 (1998).

In Nebraska, appellate courts have repeatedly considered the meaning of a dissolution decree after the death of one of the parties particularly as to the terms of the decree pertaining

to life insurance policies. E.g., *Hohertz v. Estate of Hohertz*, 19 Neb. App. 110, 802 N.W.2d 141 (2011) (considering meaning of provisions in decree regarding scope of deceased former husband's obligations to name former wife as beneficiary of death benefits). See, also, *Trueblood v. Roberts,* 15 Neb. App. 579, 732 N.W.2d 368 (2007) (considering meaning of provisions in decree regarding former wife's status as beneficiary of deceased former husband's life insurance policy). In doing so, we have applied the principles we articulated in *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002).

[5] Under Nebraska law, the general rule is that divorce does not affect a beneficiary designation in a life insurance policy. *Id.* This rule is based on the notion that the beneficiary's claim to the proceeds evolves from the terms of the policy rather than the status of the marital relationship. *Id.* But a spouse may waive such a beneficiary interest in a divorce decree. See *id.* See, also, *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005), *abrogated in part*, *Kennedy v. Plan Administrator for DuPont Sav. and Investment Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009).

[6] In this case, the trial court determined that although the beneficiary forms for Dale's life insurance policies still listed Brenda as the designated beneficiary of the policies at the time of his death, Brenda had unambiguously relinquished her beneficiary rights in the life insurance policies by virtue of the terms of the property settlement agreement. In making this determination, the trial court relied on the principles explained in *Pinkard*. In *Pinkard*, we followed the waiver rule and explained that under the waiver rule, the focus of whether a spouse has waived such a beneficiary interest

> should be upon the language of the dissolution decree and any agreement which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect. We make no distinction among IRA's, life

insurance proceeds, or other types of annuities that designate the beneficiary in the event of the death of the payee.

264 Neb. at 318, 647 N.W.2d at 89.

A competing rule, the document rule, has been discussed but not adopted in our case law. The relative merits of each rule have been compared. See *Strong v. Omaha Constr. Indus. Pension Plan, supra* (Connolly, J., dissenting; Stephan, J., joins). In Nebraska, pursuant to U.S. Supreme Court precedent, the document rule is limited to benefit plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (2006 & Supp. V 2011), and therefore, it does not apply to the present case. See *Kennedy v. Plan Administrator for DuPont Sav. and Investment Plan, supra* (abrogating in part *Strong v. Omaha Constr. Indus. Pension Plan, supra*).

[7-9] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. See *Metropolitian Life Ins. Co. v. Beaty*, 242 Neb. 169, 493 N.W.2d 627 (1993); *Hohertz v. Estate of Hohertz*, 19 Neb. App. 110, 802 N.W.2d 141 (2011). In *Hohertz*, the Court of Appeals summarized the applicable principles as follows:

> The principles of law regarding the meaning of a judgment are well settled. Ambiguity exists in a document when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006). If the contents of a dissolution decree are unambiguous, the decree is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the decree. *Boyle v. Boyle*, 12 Neb. App. 681, 684 N.W.2d 49 (2004). In such a case, the effect of the decree must be declared in the light of the literal meaning of the language used. See *Bokelman v. Bokelman*, 202 Neb. 17, 272 N.W.2d 916 (1979).

19 Neb. App. at 115, 802 N.W.2d at 145.

The trial court's order quotes the language of the property settlement agreement at length and concludes that the decree is unambiguous and that Brenda waived and relinquished her interest in Dale's life insurance policies. We have quoted the property settlement agreement language above and need not repeat it at length here. We note, however, that paragraph VI of the property settlement agreement provided that Dale "shall be awarded all interest in any pension plans, stocks, retirement accounts, 401(k), IRA, *life insurance policy* and checking or savings account in [Dale's] name, free from any claim of [Brenda]." (Emphasis supplied.)

Paragraph IX of the property settlement agreement provides that "each party acknowledges that the properties set aside to him or her . . . will be [a] release and discharge, as between themselves, of all rights, claims, interests and obligations of each party in and to the said properties." Furthermore, paragraph X(b) of the property settlement agreement provides that Brenda

> waives and relinquishes any and all interest or rights of any kind, character, or nature whatsoever, . . . and renounces all benefits which would otherwise pass to [Brenda] from [Dale] by intestate succession or by virtue of the provisions of any Will executed before this Settlement Agreement which she, as wife, or as widow, or otherwise, has had, now has, or might hereafter have against [Dale], or, in the event of his death, as an heir at law, surviving spouse, or otherwise. [Brenda] waives and relinquishes any and all interest, present and future, in any and all property, real, personal, or otherwise, now owned by [Dale] or hereafter acquired, and including all property set aside for him in this agreement . . . .

We find no ambiguity in the decree. Under paragraph VI, the life insurance policies in Dale's name were awarded to Dale, and under paragraphs IX and X(b), Brenda waived and relinquished all interest in property set aside to Dale. Similar waiver language was at issue in *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), and we concluded that the former wife therein waived her beneficiary interest in an annuity by entering into a property

settlement agreement and that although the former husband had not changed the beneficiary designation after the divorce, the waiver was effective. Upon our independent review, we conclude as a matter of law that under the terms of the decree, Brenda unambiguously waived her beneficiary interest in Dale's life insurance policies. The district court was correct when it so concluded.

[10] In this case, Brenda filed a "Motion to Modify/ Reform Property Settlement Agreement." And in the "Pre-Trial Conference Order," Brenda contended that parol evidence would clarify the parties' intent in what she claimed was an ambiguous property settlement agreement or, in the alternative, serve as a basis to modify and reform the property settlement agreement to reflect her version of the parties' intentions. In Nebraska, we have stated that where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions will not thereafter be vacated or modified in the absence of fraud or gross inequity. *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006). Elsewhere, it is generally considered appropriate for a court to modify or vacate a decree after the death of a party for the limited purpose of establishing property rights where there has been fraud or lack of process. See 27A C.J.S. *Divorce* § 401 (2005). In this case, no appeal was taken regarding property rights awarded in the decree, and Brenda has not alleged that there was a fraud or gross inequity in connection with the entry of the decree.

Brenda's contentions that we consider parol evidence or modify the property settlement agreement are founded on the proposition that the property settlement agreement is ambiguous, a proposition we have already rejected. Under the unambiguous terms of the property settlement agreement, Brenda relinquished her beneficiary rights to Dale's life insurance policies. Where the language used in the property settlement agreement is unambiguous, we are bound to consider such language from the four corners of the agreement itself, and what the parties thought the agreement meant is irrelevant. *Strunk v. Chromy-Strunk, supra*.

Many of the arguments and supporting authorities urged upon us for consideration in this case are taken from cases where contracts or other documents were at issue. These topics include parol evidence and reformation. As noted, the property settlement agreement once approved and incorporated into the decree becomes a judgment rather than a contract. *Id*. And the meaning of the judgment is a question of law. *Hohertz v. Estate of Hohertz*, 19 Neb. App. 110, 802 N.W.2d 141 (2011). The district court considered but rejected the contract concepts in its order; however, we believe these concepts are not suited to the central issue in this case. Thus, although our reasoning differs somewhat from that of the district court, we find no reversible error in its refusal to consider evidence other than the decree and its refusal to modify the decree.

## CONCLUSION

Because we conclude as a matter of law that Brenda relinquished all rights to Dale's life insurance policies in the parties' property settlement agreement, which was incorporated into the decree, the district court did not err when it enforced the dissolution decree and ordered Brenda to withdraw claims to Dale's life insurance policies.

AFFIRMED.

CASSEL, J., concurring.

The majority opinion, which I join, is entirely correct under existing law. But existing law relies upon the general rule that divorce does not affect a beneficiary designation in a life insurance policy. This in turn requires close examination of the judgment dissolving the marriage. This framework lacks certainty, contradicts ordinary expectations, and encourages litigation. These flaws could easily be remedied by legislation, and I suggest a simple approach to accomplish this change.

The basic practical problem is that after a marriage is dissolved, the former spouses frequently do not change preexisting beneficiary designations in life insurance policies and similar contractual arrangements. Sometimes there is only a

brief interval between the dissolution and the policyholder's death.[1] That circumstance applies to the case before us. Other times, the policy owner overlooks the policy's existence. Or perhaps the owner encounters bureaucratic difficulties in changing the beneficiary. For whatever reason, beneficiary designations often go unchanged. Human experience teaches that most policyholders would prefer a death benefit pass to someone other than a former spouse. Of course, a few may feel otherwise.

A beneficiary's claim to the proceeds of a life insurance policy evolves from the terms of the policy rather than the status of the marital relationship.[2] The Nebraska Probate Code[3] recognizes that a provision for a nonprobate transfer on death in an insurance policy is nontestamentary.[4] This focus on the policy leads to the general rule that divorce does not affect a beneficiary designation in a life insurance policy.[5]

While the general rule is correct on a theoretical level, in practice it breaks down, because it operates contrary to ordinary human expectations. The response of most courts, including this one, is to scrutinize the marital dissolution documents searching for a "waiver" of the beneficiary designation by the surviving former spouse. Sometimes the court will find a waiver.[6] Other times, no waiver can be found.[7] As Justices Connolly and Stephan recognized in the context of the federal Employee Retirement Income Security Act of 1974

---

[1] See *Larsen v. Northwestern Nat. Life Ins.*, 463 N.W.2d 777 (Minn. App. 1990).

[2] See *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 647 N.W.2d 85 (2002), citing *Larsen v. Northwestern Nat. Life Ins., supra* note 1.

[3] Neb. Rev. Stat. §§ 30-2201 to 30-2902, 30-3901 to 30-3923, and 30-4001 to 30-4045 (Reissue 2008, Cum. Supp. 2012 & Supp. 2013).

[4] See § 30-2715(a).

[5] See *Pinkard, supra* note 2.

[6] See, e.g., *id.*; *Sorensen v. Nelson*, 342 N.W.2d 477 (Iowa 1984).

[7] See, e.g., *Trueblood v. Roberts*, 15 Neb. App. 579, 732 N.W.2d 368 (2007); *Lynch v. Bogenrief*, 237 N.W.2d 793 (Iowa 1976).

(ERISA),[8] whether a waiver has occurred often depends upon hairline distinctions.[9]

Under ERISA, Congress has implemented a scheme employing a document rule that looks solely to the beneficiary designation in the plan documents.[10] "[B]y giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule."[11] A document rule "yield[s] simple administration, avoid[s] double liability, and ensure[s] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."[12]

But courts have favored the waiver rule because they perceive that the document rule will lead to windfalls where the surviving former spouse intended to waive the interest.[13] Ultimately, this is a policy decision. And by inaction, our Legislature has acquiesced in the waiver rule applied in this court's jurisprudence.[14] Thus, while I favor the document rule as a matter of policy, I recognize that this court should not judicially implement a document rule.

And without addressing the perceptions of fairness underlying the waiver rule, the document rule would merely substitute one flawed approach for another. The appellant in the case

---

[8] 29 U.S.C. § 1001 et seq. (2006 & Supp. V 2011).

[9] See *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005) (Connolly, J., dissenting; Stephan, J., joins), *abrogated in part, Kennedy v. Plan Administrator for DuPont Sav. and Investment Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009).

[10] See *Kennedy, supra* note 9.

[11] *Id.*, 555 U.S. at 301.

[12] *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, Circuit Judge, dissenting; Bauer, Chief Judge, and Manion, Circuit Judge, join), *abrogated in part, Kennedy, supra* note 9.

[13] See *Strong, supra* note 9 (Connolly, J., dissenting; Stephan, J., joins).

[14] See *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012) (when appellate court has judicially construed statute and construction has not evoked amendment, presumed that Legislature acquiesced in determination of Legislature's intent).

before us does not go so far as to suggest adoption of the document rule. Rather, she urges us to expand the scope of our examination under the waiver rule. Instead of focusing on only the dissolution decree and the property settlement agreement incorporated into it, she would have us look to extrinsic evidence of all of the surrounding circumstances. Thoughtful judges have advocated this approach.[15] But I disagree, because the expansive waiver rule would move further away from the simplicity, speed, efficiency, and cost savings promised by the document rule.

In my view, the best solution is a twofold legislative approach: (1) adoption of a general rule that divorce automatically revokes a prior designation of a former spouse as a beneficiary in a life insurance policy or similar nontestamentary transfer upon death and (2) subject to the automatic revocation upon divorce, adoption of the document rule.

The first recommendation is easily accomplished—indeed, there is an existing model in the Nebraska Probate Code. Section 30-2333 revokes a disposition of property by will to a former spouse, unless the will specifically provides otherwise. In other words, a provision for a former spouse in a will made before dissolution of the marriage will not result in property going to the former spouse. Instead, the property will pass as if the former spouse died first.

In the context of a life insurance policy or other nontestamentary transfer, the statute could simply state that a divorce or dissolution of marriage revokes any designation of the former spouse as a beneficiary where the designation was made before the date of the dissolution decree. This would permit a life insurance policyholder to retain a former spouse as a beneficiary by express conduct. It would merely require the owner to reinstate the beneficiary designation after the divorce. And in most cases, it would automatically effectuate the policyholder's intent that the death benefit not go to the former spouse. The automatic revocation rule, coupled with the document rule, would allow policyholders to effectuate their intent and enable beneficiaries and issuing companies to

---

[15] See *Trueblood v. Roberts, supra* note 7 (Sievers, Judge, concurring).

maximize speed and efficiency of distributions while minimizing expenses.

Thus, the court today correctly declines the appellant's invitation to expand its review under the waiver rule to evidence outside of the divorce decree and the associated property settlement agreement. But a better approach is available, and I commend it to the Legislature.

————————————

Paul D. Potter, appellant, v. Board of Regents of the University of Nebraska et al., appellees.
___ N.W.2d ___

Filed March 21, 2014.    No. S-13-544.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. **Public Officers and Employees: Immunity: Liability.** Qualified immunity protects government officials acting in their individual capacities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

3. ____: ____: ____. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.

4. **Constitutional Law: Civil Rights: Actions.** A private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States is created by 42 U.S.C. § 1983 (2006).

5. **Constitutional Law: Due Process: Tort-feasors.** The 14th Amendment's Due Process Clause does not extend to citizens a right to be free of injury wherever the State may be characterized as the tort-feasor.

6. **Due Process.** Procedural due process limits the ability of the government to deprive people of interests that constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard.

7. **Due Process: Termination of Employment.** Neither liberty nor property interests are at stake when an at-will employee loses a job but remains as free as before to seek another.

8. **Due Process: Libel and Slander.** Standing alone, stigma to one's reputation through defamatory statements is not sufficient to invoke the procedural protection of the Due Process Clause.